146 Cal.App.2d 290 (1956)
Estate of CHARLES W. NEUMEISTER, Deceased. HERBERT BROWNELL, JR., as Attorney General of the United States, Appellant,
v.
SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Trustee, etc., Petitioner; KONRAD NEUMEISTER et al., Respondents.
Civ. No. 21686. 
California Court of Appeals. Second Dist., Div. Three. 
Nov. 27, 1956.
 Dallas S. Townsend, Assistant Attorney General of United States, Office of Alien Property, Laughlin E. Waters, United States Attorney, Arline Martin, Assistant United States Attorney, Southern District of California, Mary Eschweiler, Attorney, Office of Alien Property, James D. Hill, George B. Searls and Irwin A. Seibel, Attorneys, Department of Justice, Washington, D. C., for Appellant.
 H. A. Gebhardt for Respondents. *291
 VALLEE, J.
 Appeal by the Attorney General of the United States from parts of an order directing the trustee of a testamentary trust with respect to the disposition of the balance of the trust funds.
 Charles W. Neumeister died testate November 17, 1944, a resident of the county of Los Angeles. On January 24, 1946, by decree of distribution, half of the estate was distributed to named legatees, and half to Security-First National Bank in trust with directions in subparagraph (a) to pay $300 every year to named persons (United States nationals) designated as "primary beneficiaries." The decree provided that the trust should continue as to them for the period of their lives and the lives of their descendants and heirs living at the death of the testator, or a period of ten years from the death of the testator, whichever period is the shorter, except as it might otherwise be terminated as provided in the decree.
 In subparagraph (b) the decree provided that if at any time within the term of the trust for the benefit of the "primary beneficiaries" persons named as "secondary beneficiaries" (German nationals) "shall not be prohibited by the laws of the United States of America and the laws of the State of California from becoming beneficiaries under said will and under the trust intended to be created herein," the trustee was directed to pay each of them $225 quarterly, or $75 monthly. The trustee was empowered to withhold payment to a "secondary beneficiary" if it appeared to its satisfaction that because of political or other conditions in the country in which such beneficiary resided he would not have the benefit, use or control of the funds; and if and when the conditions had been removed to pay the amount withheld and resume payment of the installments. It was provided that the provision for withholding should not continue beyond the time elsewhere specified as fixing the duration of the trust. The trustee was directed to continue distribution to the "secondary beneficiaries" until each had received an equal amount and the trust estate had been completely exhausted; provided, however, that in no event should the trust continue longer than 20 years from the date of death of the testator, nor beyond the continuance of the lives of the "primary" and "secondary beneficiaries" and their descendants or heirs living at the testator's death, whichever period is shorter.
 The decree further provided that when the "secondary beneficiaries" should be legally eligible to receive distribution of *292 trust funds, all payments to the "primary beneficiaries" should cease and:
 "(h) If the trust as to the secondary beneficiaries shall continue for the period of twenty years from the date of decedent's death, then, upon the expiration of said period of twenty years from the date of decedent's death the trust shall thereupon terminate and the trust estate then remaining shall be distributed, paid and delivered to the said secondary beneficiaries, to the exclusion of any of the primary beneficiaries, unless all of said secondary beneficiaries shall at that time be dead, in which event the trust estate then remaining shall be distributed, paid and delivered to said primary beneficiaries."
 The material parts of the decree of distribution are set out in the margin. [fn. 1] *293
 On January 31, 1946, the Alien Property Custodian of the United States executed Vesting Order Number 5769 whereby he vested in himself "all right, title, interest and claim of *294 any kind or character whatsoever" of the secondary beneficiaries "and each of them, in and to the Trust created under the Will" of the deceased. [fn. 2]
 On May 8, 1946, the trustee filed a petition requesting the court to "construe the last Will and Testament of said decedent, and the Decree of Distribution of this Court and instruct your Trustee whether to pay said trust money for the secondary beneficiaries over to the Alien Property Custodian under one interpretation of the provisions of the Will of the decedent, or whether such trust moneys should be paid by the Trustee herein to the primary beneficiaries in the United States, under the provisions of said trust, on the grounds that the rights of the secondary beneficiaries are dependent on their being in position to actually receive payment and if they are not, then to adopt the alternate course in making payments to the primary beneficiaries herein, all of whom are in the United States." On December 20, 1946, the court instructed the trustee as follows:
 "That due to the fact that the Alien Property Custodian issued its vesting order No. 5769 thereby vesting all the right, title and interest of the four (4) secondary beneficiaries, being residents and nationals of a designated enemy country--Germany--and that the Alien Property Custodian by reason of the Vesting Order stands in place of the said secondary beneficiaries, and becomes the owner of said funds, thereby causing a failure on the part of said secondary beneficiaries to be legally eligible to personally receive distribution of said trust funds amounting to the sum of Eight Thousand Four Hundred Ninety-eight Dollars and eighty-seven cents ($8,498.87[)], distribution and payment of the amounts provided for in sub-Paragraph (a) of the Decree of Distribution shall be made to the primary beneficiaries, share and share alike, being the beneficiaries in the United States."
 The trustee then began paying the "primary beneficiaries" and continued to do so through November 1954.
 On December 2, 1954, the trustee filed a petition for instructions, *295 praying "[t]hat the Court declare said Trust Estate terminated as of November 17, 1954," the date when the 10-year period prescribed in the decree for the payment to the "primary beneficiaries" expired. The Attorney General appeared in response to the petition and an appearance was made on behalf of the German "secondary beneficiaries" in their individual capacities. Evidence was introduced establishing the existence of reciprocity under German law as of November 1954. The court found: 1. It was the intent of the testator that the "secondary beneficiaries" take nothing unless they shall be legally eligible to receive distribution of the trust funds and personally receive distribution. 2. On December 26, 1946 said "secondary beneficiaries" were not eligible to personally receive distribution of the trust funds, and the United States government took nothing by its Vesting Order Number 5769 issued January 31, 1946. 3. On November 7, 1954 (10 years after the death of the decedent) the "secondary beneficiaries" were entitled to personally receive the benefit of the trust funds. The court then ordered: 1. The "secondary beneficiaries" are entitled to receive the net distributable balance of the funds on hand with the trustee. 2. The payments shall be made to the "secondary beneficiaries" pursuant to the will, the decree, and this order; the first payments to be made as of February 17, 1955, and subsequent payments quarterly thereafter. 3. This trust does not terminate at this time. Since payments are to be paid to the "secondary beneficiaries," the trust is to continue until the funds are exhausted, but not later than November 17, 1964. 4. The Attorney General, as successor to the Alien Property Custodian, is not entitled to any of the payments from the trust which commence as to the "secondary beneficiaries" on February 17, 1955. The Attorney General appeals from the parts of the order to which reference has been made.
 Paragraphs (a) and (b) established a trust for a maximum period of 10 years for the benefit of the United States nationals subject to change of beneficiaries in favor of the German nationals whenever the latter were not "prohibited by the laws of the United States of America and the laws of the State of California from becoming beneficiaries under" the trust. At such time as no prohibition was thus placed on the "secondary beneficiaries," the trust assets became payable to them. It is agreed that in November 1954 neither state nor federal law imposed any prohibition on the German nationals *296 "from becoming beneficiaries under" the trust. It is also agreed that the fact the "secondary beneficiaries" were enemy nationals at the time of the death of the testator did not deprive them of the right to take under the will.
 The question is whether the Alien Property Custodian took anything by his Vesting Order. The answer depends on whether under the decree of distribution the "secondary beneficiaries" took nothing unless they should be legally eligible to receive distribution of the trust fund at the date of death of the testator. The Attorney General says the interests of the "secondary beneficiaries" were contingent interests. The "secondary beneficiaries" say they had nothing until they were eligible to distribution. The trial judge was of the view "that the vesting of any rights in the secondary beneficiaries was conditional and was subject to a condition- precedent--the condition-precedent being the existence of a legal situation in which the secondary beneficiaries could have and receive the benefits of the property involved," but that the Attorney General could not reach such interests until the condition was fulfilled. We have concluded the interests of the "secondary beneficiaries" were from the date of death of the testator property interests which vested in the Alien Property Custodian at the time of the Vesting Order.
 First, the order of December 20, 1946, adjudicated that the Alien Property Custodian had succeeded under his Vesting Order to the interests of the "secondary beneficiaries" and had become "the owner of said funds, thereby causing a failure on the part of said secondary beneficiaries to be legally eligible to personally receive distribution." That order became final and is res judicata with respect to those questions.
 Estate of Schneider, 140 Cal.App.2d 710 [265 P.2d 45], is conclusive that from the death of the testator the "secondary beneficiaries" had contingent property interests in the trust and that such interests vested in the Alien Property Custodian by his Vesting Order. In Schneider the gift was to German nationals "If ... alien residents of Germany shall become legally entitled under the laws of the United States and the State of California to take and inherit under my will. ..." In an opinion authored by Mr. Presiding Justice Moore it is stated (p. 717):
 "Immediately, upon the death of Mrs. Schneider all legacies bequeathed by her, including the beneficial interests in the trust which had failed, vested in the designated donees (Prob. Code, 300, 28; Estate of Laurence, 84 Cal.App.2d 500, 504 *297 [191 P.2d 109]; Burns v. McGraw, 75 Cal.App.2d 481, 488 [171 P.2d 148]), subject only to the possession of the executrix for the purpose of administration. (Prob. Code, 142; Civ. Code, 694.) However, their delayed possession did not affect the fact that each legatee and each beneficiary was at decedent's death, vested with right of ownership of his bequest or beneficial interest. Such vesting occurred in 1945 when the testatrix departed this life. Hence, at the time, in 1946, when the Alien Property Custodian made the vesting order vesting ownership thereof in himself these beneficial interests were then the properties of the several persons named in (A)3 of Eleventh and the Custodian was authorized by the Trading with the Enemy Act to seize them."
 "[P. 718.] Conceding that the interests thus created were contingent, they were nevertheless property interests capable of transfer or of inheritance. (Civ. Code, 669, 688, 693, 699; Sinclair v. Crabtree, 211 Cal. 524, 528 [296 P. 79].) Since they were interests capable of transfer, they became property of the German beneficiaries promptly on the death of Mrs. Schneider in 1945."
 "The conclusion is, therefore, unavoidable that at the time of the vesting order, in 1946, the estate of each legatee and the beneficial interest of each beneficiary of the trust was subject to seizure under the Trading with the Enemy Act, as amended." (Also see Matter of Bendheim, 124 Misc. 424 [209 N.Y.S. 141], aff. 214 App.Div. 716 [209 N.Y.S. 794]; Matter of Littman, 176 Misc. 679 [28 N.Y.S.2d 458]; Matter of Carrington, 195 Misc. 442 [90 N.Y.S.2d 757]; Matter of Sandhagen, 107 N.Y.S.2d 73; Estate of Kuhirt, 132 N.Y.S.2d 97; Central Hanover Bank & Trust Co. v. Markham, 68 F.Supp. 829, 830.)
 [1] The Trading with the Enemy Act must be given a liberal construction. (Cities Service Co. v. McGrath, 342 U.S. 330, 333-334 [72 S.Ct. 334, 96 L.Ed. 359]; United States v. Chemical Foundation, 272 U.S. 1, 9-10 [47 S.Ct. 1, 71 L.Ed. 131].) The seizure power conferred by sections 5(b) and 7(c) of the Trading with the Enemy Act as amended (50 U.S.C.App. 5(b), 7(c)) is all-embracing in its terms. The power extends to "any property or interest" of a foreign national (50 U.S.C.App. 5(b)) including, but not limited to, "choses in action and rights and claims of every character and description." (50 U.S.C.App. 7(c).) The language of these provisions is "most comprehensive." (Application of Miller, 2d Cir., 288 F. 760, 766.) [2] The terms *298 "are so general and all-inclusive that" the act "permits the seizure under proper circumstances of almost any character of interest in property. Any other ruling ... would be to frustrate the purpose of the Act." (Central Hanover Bank & Trust Co. v. Markham, 68 F.Supp. 829, 830.)
 [3] The wording of the decree of distribution at bar is: "If at any time within the term of the aforesaid trust for the benefit of said primary beneficiaries, the persons hereinafter designated as 'secondary beneficiaries' shall not be prohibited by the laws of the United States of America and the laws of the State of California from becoming beneficiaries under said will and under the trust intended to be created herein, then from the time that such prohibition no longer exists the trustees shall distribute and pay out of the trust estate then remaining" specified amounts to each of such persons. The "secondary beneficiaries" thus had contingent interests in the trust estate. The wording quoted merely postponed enjoyment of a gift already made. (Estate of Heye, 195 Misc. 1026 [91 N.Y.S.2d 266]; Estate of Reiner, 44 N.Y.S.2d 282. Cf. Estate of Schaefer, 121 N.Y.S.2d 233.) All conditions imposed by the testator on the gift to the "secondary beneficiaries" have been fulfilled and the Attorney General, as successor to their interest, is now entitled to distribution of the trust assets. (Sinclair v. Crabtree, 211 Cal. 524 [296 P. 79]; Estate of Schneider, 140 Cal.App.2d 710 [296 P.2d 45].) The fact that the interests did not become distributable until after termination of the war presents no bar to payment to the Attorney General. (Application of Miller, 288 F. 760, 768; Hess v. Miller, 6 F.2d 388; Matter of Bendheim, 124 Misc. 424 [209 N.Y.S. 141], aff. 214 App.Div. 716 [209 N.Y.S. 794]; In re Bendit's Will, 214 App.Div. 446 [212 N.Y.S. 526]; Todeva v. Oliver Iron Mining Co., 232 Minn. 422 [45 N.W.2d 782, 789].)
 The parts of the order appealed from are reversed with directions to the superior court to make findings and render an order consonant with this opinion.
 Shinn, P. J., and Wood (Parker), J., concurred.
 "(b) If at any time within the term of the aforesaid trust for the benefit of said primary beneficiaries, the persons hereinafter designated as 'secondary beneficiaries' shall not be prohibited by the laws of the United States of America and the laws of the State of California from becoming beneficiaries under said will and under the trust intended to be created herein, then from the time that such prohibition no longer exists the trustee shall distribute and pay out of the trust estate then remaining, in its discretion either in quarter annual installments in the sum of $225.00 or in monthly installments of the sum of $75.00, to each of the persons hereinafter designated as secondary beneficiaries or in equal shares to the lawful children and grandchildren per stirpes from time to time living of any of said secondary beneficiaries who have heretofore died or who may die either during decedent's lifetime or thereafter, the remittance of said sums to be made by the trustee in such medium of exchange and in such manner and form as in the discretion of the trustee may be deemed for the best interests of said secondary beneficiaries individually and collectively."
 "(c) If at any time during the continuance of the trust it shall appear to the satisfaction of the trustee that due to political or other conditions existing in Germany or any other country in which any of said secondary beneficiaries may be resident, any of such beneficiaries would not have the benefit, use or control of funds distributed from this trust to him or her, in such event, notwithstanding any other provisions of this trust, during any period when such conditions shall exist, all distribution of funds from this trust as to such particular beneficiary or beneficiaries shall be withheld and shall be retained in the trust. If and when the conditions above referred to shall no longer exist or have been removed, distribution to such beneficiary or beneficiaries as to whom distribution of funds has been withheld, shall be made of all sums which, under the terms hereof shall have become payable up to that time, and the trustee shall thereafter resume distribution of trust funds to such secondary beneficiary or beneficiaries entitled thereto according to the terms of the trust. If and when any of said secondary beneficiaries shall become a resident of the United States of America or some other country where the conditions above referred to do not exist, then as to such beneficiary or beneficiaries, distribution shall be made by the trustee of all sums which, under the terms hereof, shall have become payable to such beneficiary or beneficiaries up to the time of such change of residence, and the trustee shall thereafter resume distribution of trust funds to such secondary beneficiary or beneficiaries entitled thereto according to the terms of the trust."
 "(d) The foregoing provisions for withholding distribution shall not continue beyond the time or event elsewhere herein specified as fixing the maximum duration of this trust."
 "(e) The trustee shall continue distribution of trust funds in said installments to said secondary beneficiaries until each of said secondary beneficiaries shall have received an equal amount and said trust estate shall be completely exhausted; provided, however that in no event shall said trust continue for a period longer than twenty years from the date of decedent's death, nor beyond the period of the continuance of the lives of the primary beneficiaries and secondary beneficiaries herein named, and of their descendants and heirs living at the time of decedent's death, whichever period is the shorter."
 "(f) If and when the contingencies mentioned subparagraph (b) of this trust shall occur, and said named secondary beneficiaries shall be legally eligible to receive distribution of trust funds, all payments of trust funds to said primary beneficiaries shall cease, notwithstanding any hereinabove provisions to the contrary, except as hereinafter provided."
 "(g) In case said trust for the benefit of said primary beneficiaries shall continue for the full period of ten years from the date of decedent's death, and upon the expiration of said period the contingencies mentioned in sub-paragraph (b) contained in this Article X. of said will have not occurred and said named secondary beneficiaries are not legally eligible to receive distribution of trust funds, then the trust as to all beneficiaries shall terminate and the trust estate then remaining shall be distributed, paid and delivered to the said primary beneficiaries, and to any of the secondary beneficiaries who at said time may have become residents of the United States of America or of any country the residents whereof are legally eligible to distribution of trust funds under the laws then existing of the United States of America and of the State of California, and if none of the said secondary beneficiaries at said time come within said category or description only the said primary beneficaries shall receive the trust estate then remaining."
 "(h) If the trust as to the secondary beneficiaries shall continue for the period of twenty years from the date of decedent's death, then, upon the expiration of said period of twenty years from the date of decedent's death the trust shall thereupon terminate and the trust estate then remaining shall be distributed, paid and delivered to the said secondary beneficiaries, to the exclusion of any of the primary beneficiaries, unless all of said secondary beneficiaries shall at that time be dead, in which event the trust estate then remaining shall be distributed, paid and delivered to said primary beneficiaries."
NOTES
[fn. 1] 1. "(a) the trustee shall, as of the date of the decree of distribution of said estate, and every successive year thereafter, distribute and pay to the persons hereinafter designated as 'primary beneficiaries' the sum of $300.00 to be divided equally share and share alike between them. The persons designated as such primary beneficiaries are the following to- wit: Barbara Siebrecht, sister, John Vollmer, brother-in-law, Johanna Vollmer, sister-in-law, and the survivors or survivor of them, and in case all three of them shall die, then the three children of said Barbara Siebrecht--Mamie Farrell, Tessy Siebrecht, and Henry Siebrecht, equally, share and share alike, and their lawful issue per stirpes of any of them deceased. This trust as to them shall continue for the period during the continuance of the lives of said primary beneficiaries and their descendants and heirs living at the time of decedent's death or a period of ten years from the date of decedent's death, whichever period is shorter, except as it may be otherwise terminated as hereinafter provided.
[fn. 2] 2. By Executive Order 9788 all property and interests vested in, transferred to, or seized by the Alien Property Custodian, and all authority, rights, privileges, powers, duties and functions vested in said Custodian, or in the Office of Alien Property Custodian, were transferred to the Attorney General effective as of October 15, 1946.