Frieda **HERRMANN**, as sole remaining trustee under Trust Agreement dated March 30, 1946, by and between Fred Nagel, donor, and Frieda Herrmann and Hazel Ouse, trustees, Appellant,

v.

William P. **ROGERS**, Attorney General of the United States, Appellee.

William P. **ROGERS**, Attorney General of the United States, Appellant,

v.

Frieda **HERRMANN**, as sole remaining trustee under Trust Agreement dated March 30, 1946, by and between Fred Nagel, donor, and Frieda Herrmann and Hazel Ouse, trustees, Appellee.

No. 15233.

United States Court of Appeals
Ninth Circuit.

April 2, 1958.
As Amended July 17, 1958.

Felton & Bielenberg, Moscow, Idaho, Gee & Hargraves, Pocatello, Idaho, Philip E. Petersen, Moscow, Idaho, for appellant.

Sherman F. Furey, Jr., U. S. Atty., Marion J. Callister, Asst. U. S. Atty., Boise, Idaho, Dallas S. Townsend, Asst. Atty. Gen., James D. Hill, Irwin A. Seibel, George Searls, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before FEE and HAMLEY, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

These are cross appeals from the judgment entered in action number 1946, in the United States District Court for the District of Idaho, Central Division, entitled "Herbert Brownell, Jr., Attorney General of the United States, plaintiff, vs. Frieda Herrmann, as trustee under Trust Agreement dated March 30, 1946, by and between Fred Nagel, donor, and Frieda Herrmann and Hazel Ouse, trustees, defendants."

### History

This action was commenced by the Attorney General of the United States under Section 17 of the Trading with the Enemy Act (40 Stat. 425, 50 U.S.C.A. Appendix, § 17) against the trustee of an inter vivos trust created in favor of persons, all of whom were residents and nationals of Germany. As successor to the Alien Property Custodian, the Attorney General had vested all the outstanding beneficial interests in the trust as enemy property. The complaint asked that the trustee be directed to pay over to the Attorney General all of the trust property in her hands; that the trustee be surcharged for having wrongfully distributed trust funds for the benefit of the enemy nationals; and that the trustee render a full accounting of her trust.

On cross-motions for summary judgment the District Court rendered a memorandum opinion in favor of the Attorney General. Before the entry of judgment, the German beneficiaries filed a motion to intervene. Over the objection of the Attorney General, the motion was granted. An answer on behalf of the German beneficiary was filed and the matter was then submitted on stipulated facts.

Thereafter the District Court rendered a second memorandum opinion, reaffirming its position that the Attorney General was entitled to the property in the hands of the trustee. Following a hearing on the trustee's accounting, the Court entered Findings of Fact and Conclusions of Law and a Judgment in accordance with its opinion.

The trustee filed notice of appeal and thereafter the Attorney General appealed from that part of the judgment which failed to surcharge the trustee. The intervenors did not appeal. The parties will hereafter be referred to as plaintiff and defendant, as they were denominated in the trial court.

### Facts

As noted above the matter was submitted to the District Court on stipulated facts, which are as follows:

By trust agreement executed March 30, 1946, Fred Nagel, an American citizen and a citizen of the state of Idaho, transferred a number of securities in trust to Frieda Herrmann and Hazel Ouse, both American citizens. The settlor named fourteen persons, his nephews and nieces, as the beneficiaries of the trust and allocated to each a percentage

share of the trust property. These beneficiaries were admittedly German nationals at the time of the execution of the trust instrument. The trustees were directed to make annual payments of the income of the trust to the fourteen named beneficiaries with discretion, however, in the trustees to withhold payment. The direction in the trust reads as follows:

"To pay the entire net income thereof, in annual installments, on or before the 10th day of January, to each of the named beneficiaries according to their percentage of the same, with the discretion however in the trustees to withhold the payment if they see fit. They need not establish any reason for their withholding."

The trustees were directed to pay the trust res, in designated proportions, over to the designated beneficiaries in the event any of them came to the United States. The trustees were also given the discretion to pay over to the designated beneficiaries their stated shares, in their discretion, if they should find that the gift, when paid, would not be subject to confiscation by any government nor create sinews of war for any government antagonistic to the United States.

"In the event any of the named beneficiaries herein come to the United States, the trustees have the authority and the duty to pay over to said beneficiaries his share of the trust estate. Furthermore, in the event it is possible for the trustee to pay over to the named beneficiaries herein, at any time after the creation of this trust, the shares respectively going to each of said beneficiaries, they may do so; providing that said payment to said beneficiaries shall not be subject to confiscation by; or create sinews of war for any government antagonistic to the United States. It is not my purpose to evade payment to the United States or to the State of Idaho of any tax justly due them."

If not sooner terminated, the trust was to terminate upon the death of the last of the named beneficiaries and the trust property was to be distributed as follows:

"On the death of the last named beneficiary hereinafter provided, to divide the said trust fund, if not sooner terminated, including any accumulated income thereon, into as many parts, and the size of the parts shall be according to the percentage given the named beneficiaries hereinafter set forth; and then to pay over and deliver one of such parts to the heirs of the bodies of said beneficiaries. In the event any one of the named beneficiaries herein dies leaving no heirs of his or her body, then and in that event, said sums shall be divided amongst the other named beneficiaries or the heirs of their bodies in proportion to their percentage herein set out so that no property or money will remain in said trust upon its termination."

The trust thus created was a spendthrift trust and provided that the interests thus created were non-assignable and could not be reached by creditors.

As all of the beneficiaries were nationals and residents of Germany, the Attorney General, on May 12, 1949, executed Vesting Order 13246 by which he vested in himself for the benefit of the United States all "the right, title, interest and claim of any kind or character whatsoever" of all the beneficiaries in and to the trust. On May 26, 1949, certified copies of the vesting order were served on Frieda Herrmann, who was then the sole remaining trustee, and on her attorneys. At the same time and on several subsequent occasions, demands were made upon the trustee to deliver over to the Attorney General the interests of the beneficiaries but the trustee refused to do so.

The trustee disbursed various sums to the beneficiaries before and after the issuance of the Vesting Order. Prior to the issuance of the vesting order, the

trustee distributed trust income in the amount of $9,223.44 for the account of the German beneficiaries by sending cash remittances to them and making purchases on their behalf. Following the issuance of the vesting order the trustee continued to use trust income for the same purposes and expended a total of $6,088.85.

The District Court held "that plaintiff (Attorney General) is the owner and entitled to immediate possession of all the remaining assets of the trust * * *", but refused to surcharge her for any of the disbursements made by her.

### Issues

The trustee appeals from the judgment of the District Court ordering her to turn over the trust funds to the Attorney General. The Attorney General appeals from so much of the judgment as failed to surcharge the trustee for payments made to the beneficiaries after the date of the vesting order.

The issues, then, are two. First, were the interests of the beneficiaries such that they came within the act and hence subject to confiscation, and secondly, if they were, was the proper surcharge made?

### The First Issue—Did The Interests Vest?

The trustee argues that confiscation in this case would be contrary to the best interests of the United States and would not be consistent with the purpose of the Trading with the Enemy Act. The trustee points out that the trust was created in March of 1946, one year after the cessation of hostilities with the German government and to confiscate the property involved would not succeed in reducing the war potential of an enemy nation, and she argues that as a matter of government policy a liberal approach to the matter should be adopted.

It may seem unjust, at this late date, to carry out to the letter of the law the full application of the Trading with the Enemy Act. We are bound, however, to apply the law as it stands, and the question of policy as argued by the trustee,

is an argument best addressed to the Congress, and not the courts.

It is next argued that the interest here seized is a contingent remainder and, as such, is not subject to seizure under Sec. 5(b) of the Act, 50 U.S.C.A.Appendix, § 5(b). The trustee relies upon the cases of Brownell v. Edmunds, 4 Cir., 209 F.2d 349; McGrath v. Ward, D.C., 91 F.Supp. 636, and Harvard Trust Co. v. Attorney General, 329 Mass. 79, 106 N.E.2d 269, and others.

The cases cited in support of the trustee's position hold that, for one reason or another, the enemy alien never acquired any right, title or interest whatever in the subject matter, and consequently there was nothing to seize. It should also be noted, that in none of these cases were all of the outstanding beneficial interests in the trust seized by the Custodian. American citizens and residents were the alternative beneficiaries upon the failure of the gift to the enemy beneficiaries. Here, the beneficiaries, as well as the persons who were to take in the event the named beneficiaries could not, are all German residents and nationals. Especial reliance is placed on the Edmunds case, supra. In the Edmunds case the court held the gift invalid as violating the rule against perpetuities. The Attorney General's seizure of this invalid bequest availed him nothing, and the gift was awarded to the American residuary legatee. It is true that by way of dictum the court suggests that a contingent interest is not such a property interest as to be within the seizure powers of the Government under the Act. In our opinion, however, this dictum is not controlling, and is contrary to the authorities which we will discuss later.

It is not necessary to here decide whether these interests were contingent or vested. The result is the same, and we can assume arguendo the interest to be contingent. Contingent future interests are recognized as property interests in Idaho. Chapter 1 of Title 55 of the Idaho Code, which deals generally with "Property and Ownership," includes a contingent interest as one form of own-

ership. It divides future interests into those which are vested (Section 55–105) and those which are contingent (Section 55–106). Section 55–106 provides: "Contingent interests.—A future interest is contingent whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." Section 55–109 provides: "Future interests pass by succession, will and transfer in the same manner as present interests." In Idaho, the owners of a contingent future interest may maintain an action to determine any adverse claims to the property. Wilson v. Linder, 18 Idaho 438, 110 P. 274. The California Civil Code classifies property interests in a manner similar to that of Idaho, and two well reasoned California decisions have squarely decided the point under discussion.

In Estate of Zuber, 146 Cal.App.2d 584, 304 P.2d 247, a California decedent left the great bulk of her property to German relatives by a will which she executed after the outbreak of World War II. The testatrix there, just as did the settlor of the trust here, sought to provide against the unsettled conditions abroad. She made certain specific legacies, three of which named German nationals and residents as recipients, "each such bequest to be effective only in the event the beneficiary shall survive distribution of the article bequeathed." The decedent expressly took cognizance of the fact that the German legatees were living in a country then at war with the United States. To assure these legatees of ultimate delivery the decedent authorized the executor to defer transmittal until such time as delivery could be assured and if the estate were ready to be closed prior to such time, to hold the articles in trust for the benefit of the legatees. By a later paragraph the decedent disposed of the residuary estate, which comprised the vast bulk of the property, to two German relatives. Her disposition in this respect took the following course. She gave her executor discretion "to sell and reduce to cash all of the rest, residue and remainder of my

estate during the ordinary course of the probate proceeding." In the event of such sale, the proceeds were to go to her two German relatives, "share and share alike, if they both survive distribution, or in the event either of them does not survive distribution, the surviving children of such deceased one shall take the share of their deceased parent by right of representation." But if the executor does not deem it wise to sell "while the probate proceeding is still pending" then the property is given to the executor "as trustee for the benefit of the said (German relatives), or in the event of the death of either of them, to the survivor and to the children of the deceased one, by right of representation." Within three years after such receipt by the trustee, the property was to be sold and the proceeds distributed to the same German beneficiaries, the children of either deceased one taking the parent's share by right of representation. During the life of the trust, the trustee was given discretion to "make remittances from time to time to or for the benefit of either of the German beneficiaries * * * for their maintenance or education * * *"

The trial court, in the Zuber case held that the specific legacies to German beneficiaries and the residue of the estate should be distributed to the executor as trustee for the German beneficiaries, free from any claim of the Attorney General arising by virtue of the vesting order issued in that case. The California District Court of Appeal reversed. It held that the German beneficiaries took not less than a contingent future interest and that such an interest is an estate which is subject to seizure under the Trading with the Enemy Act. In reversing the lower court the California Appellate Court followed a decision rendered by it earlier in 1956 in Estate of Schneider, 140 Cal.App.2d 710, 296 P.2d 45, 47, a case in which the gift was to German beneficiaries "if * * * alien residents of Germany shall become legally entitled under the laws of the United States and the State of California to take and inherit under my will and this

trust * * *" The Appellate Court in the Zuber case quoted with approval the following statement from Schneider [146 Cal.App.2d 584, 304 P.2d 255]: "Conceding that the interests thus created were contingent, they were nevertheless property interests capable of transfer or of inheritance * * * Since they were interests capable of transfer, they became property of the German beneficiaries promptly on the death of Mrs. Schneider in 1945. 'The conclusion is, therefore, unavoidable that at the time of the vesting order, in 1946, the estate of each legatee and the beneficial interest of each beneficiary of the trust was subject to seizure under the Trading with the Enemy Act, as amended.'"

The case of Estate of Neumeister, 146 Cal.App.2d 290, 304 P.2d 67, another case involving alien property, affirmed the principle that contingent interests fall within the seizure powers. In that case, the decedent also sought, as here, to provide against the uncertainties created by wartime conditions in making gifts to German beneficiaries. The trust there directed that periodic payments of a fixed amount be made to named German nationals if at any time, within a period no later than ten years from the death of the testator, the German nationals "shall not be prohibited by the laws of the United States of America and the laws of California from becoming beneficiaries under" the will and the trust intended to be created therein. It was also provided that payment was to be withheld, and the funds retained in the trust, notwithstanding any other provision of the trust, if at any time during a period no later than twenty years from the death of the testator "it shall appear to the satisfaction of the trustee that due to political or other conditions existing in Germany or any other country in which any of (the German) beneficiaries may be resident, any of such beneficiaries would not have the benefit, use or control of (the) funds * * *" The resumption of payments was authorized if and when the conditions had been removed or "if and when any of said

* * * beneficiaries shall become a resident of the United States of America or some other country where the conditions above referred to do not exist * * *"

The Court rejected the contention of the German beneficiaries that because they were not legally eligible to receive distribution at the date of the testator's death in 1944, they took nothing then and that therefore the Alien Property Custodian's seizure order availed him nothing. It held that the interests of the German beneficiaries, although subject to a condition which had not been fulfilled at the time the seizure order was issued, "were from the date of death of the testator property interests which vested in the Alien Property Custodian at the time of the Vesting Order."

Other courts have reached the conclusion that contingent interests fall within the ambit of the seizure powers. See Matter of Bendheim's Estate, 124 Misc. 424, 209 N.Y.S. 141, affirmed 214 App. Div. 716, 209 N.Y.Supp. 794; Matter of Littman's Estate, 176 Misc. 679, 28 N.Y. S.2d 458; Matter of Carrington's Estate, 195 Misc. 442, 90 N.Y.S.2d 757; Central Hanover Bank & Trust Co. v. Markham, D.C.S.D.N.Y., 68 F.Supp. 829; Matter of Sandhagen's Estate, 200 Misc. 847, 107 N.Y.S.2d 73; Estate of Kuhirt, Sur., 132 N.Y.S.2d 97.

In view of the foregoing, it is unnecessary to pass upon additional arguments cited in support of the trustee's case which are directed toward the exclusion from the purview of the Act of interests of the nature we are concerned with here. The Attorney General took all right, title, interest and claim of any kind or character whatsoever of all beneficiaries referred to in the trust agreement, by virtue of Vesting Order 13246. That order was issued under the authority of the Trading with the Enemy Act, 40 Stat. 411, as amended, 50 U.S. C.A.Appendix, § 1 et seq. Section 5(b) of that Act authorizes the vesting of "any property or interest" and Section 7(c) permits the seizure of "any money or other property including (but not there-

by limiting the generality of the above) * * * choses in action, and rights and claims of every character and description * * *"

The act is extremely comprehensive and all inclusive and permits the seizure under proper circumstances of almost any character of interest in property. Application of Miller, 2 Cir., 288 F. 760, 766; Central Hanover Bank & Trust Co. v. Markham, D.C.S.D.N.Y., 68 F.Supp. 829, 830. Indeed, the Supreme Court has held that the seizure provisions should be liberally construed. Cities Service Co. v. McGrath, 342 U.S. 330, 333–334, 72 S.Ct. 334, 96 L.Ed. 359; United States v. Chemical Foundation, 272 U.S. 1, 9–10, 47 S.Ct. 1, 71 L.Ed. 131. It serves only to lengthen this opinion to make further inquiry into the nature of the interests involved. We are of the opinion the judgment of the trial court, insofar as it held the Attorney General was entitled, under Vesting Order 13246, to such trust funds as remained in the hands of the trustee, is correct and must be affirmed.

### The Second Issue—The Surcharges

A vesting order divests the alien enemy owners of "every right in respect of * * * property seized" and leaves them "no beneficial right to, or interest in, the property." Cummings v. Deutsche Bank, 300 U.S. 115, 120–121, 57 S.Ct. 359, 362, 81 L.Ed. 545. Having succeeded to the rights of all of the beneficiaries of the trust the Attorney General was entitled to the trust res and all the income therefrom. The trustee, once she had been put on notice of the vesting order was thereafter disbursing funds which were neither her own nor those to which the beneficiaries were entitled. In making distribution after notice of the vesting order the trustee took her chances in so doing and must be held responsible. In re Free's Estate, 327 Pa. 362, 194 A. 492. The trustee must be surcharged for the expenditures made after notice of the vesting order in the sum of $6,088.85, and failure to so provide in the judgment was error.

The judgment of the lower Court is affirmed to the extent that it found the plaintiff, the Attorney General, entitled to immediate possession of all the assets of the trust created by Fred Nagel. The judgment is in error in failing to surcharge the trustee with the expenditures made by her on behalf of the beneficiaries subsequent to the date of the vesting order in the amount of $6,088.85.

Having affirmed the judgment of the lower court in part and reversed it in part, remand is ordered to the end that said judgment insofar as it is concerned with the matter of surcharges may be corrected in accordance with this opinion.

Neither party shall be awarded costs on this appeal as against the other party.