Herbert VON BREDOW, Maria Von Bredow, and Philippa Von Thun-Hohenstein, Nee Von Bredow

v.

UNITED STATES.

No. 470-57.

United States Court of Claims.

Jan. 14, 1959.

Chisman Hanes, Washington, D. C., for plaintiffs. James L. Kaler, Gerald G. Schulsinger, and Klagsbrunn, Hanes & Irwin, Washington, D. C., on the brief.

George B. Searls, Washington, D. C., with whom were Asst. Attys. Gen. George Cochran Doub and Dallas S. Townsend, for defendant. M. Morton Weinstein, Washington, D. C., on the brief.

MADDEN, Judge.

The plaintiffs Philippa von Thun-Hohenstein and Maria von Bredow are citizens and residents of Germany. The plaintiff Herbert von Bredow is a citizen of Germany who came from Germany to the United States in 1953. They bring this action to recover cash and securities which the Alien Property Custodian has vested, or to recover the value of the cash and securities so vested. The Government has moved for a summary judgment on the grounds that the court has no jurisdiction of the subject matter of the action and that, in any event, the petition does not state a cause of action which would entitle the plaintiff to relief.

The plaintiffs are children of Waldemar Leopold von Bredow who in 1930 created a trust with the Union Trust Company of the District of Columbia as trustee. The trust instrument provided as to the one-half of the trust property with which we are here concerned, that the income should be paid to the plaintiffs, each receiving his or her proportionate share, until each reached the age of 25, at which time each was to receive his or her proportionate share of the principal. If any child died before reaching the age of 25, that share should go to the descendants of the child so dying. If there should be no descendants of a child dying before reaching the age of 25, that share was to go over to the surviving children, or the surviving descendants of other children not surviving.

The plaintiffs reached the age of 25 in 1948, 1951 and 1953. In the meantime by Vesting Order No. 441, 7 F.R. 10405, dated December 4, 1942, the Alien Property Custodian had vested "all right, title, interest and estate, both legal and equitable" of the plaintiffs "in and to" the trust property. The stated reason for the vesting was that the plaintiffs were nationals of Germany, an enemy

country. The trustee turned the property over to the Attorney General who had succeeded to the functions of the Alien Property Custodian, in 1950, 1952, and 1953. The plaintiffs filed a claim under section 32(a) of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 32 (a), for the administrative return of the property, but the claim was denied.

The plaintiffs assert that pursuant to declarations of the President, there was no authority to vest German property or rights unless they were "located in the United States on or before December 31, 1946." They then say, in effect, that they had no property or rights in the United States in 1942, when the purported vesting took place; that they had no such property or rights until the dates in 1948, 1951, and 1953 when they, respectively, reached the age of 25 and became, according to the provisions of the trust instrument, entitled to the possession of the principal of the trust. They say that, until those dates, they had only "contingent" interests, and that such interests were not subject to vesting within the meaning of the Trading With the Enemy Act, and the Executive Orders implementing that statute.

The significance of the December 31, 1946 date is discussed in our decision in Gmo. Niehaus & Co. v. United States, 153 F.Supp. 428, 139 Ct.Cl. 605, and will not be treated here. We assume that if these German nationals first acquired their interest in the property, using the word "interest" in the proper sense in relation to the vesting of enemy property, after December 31, 1946, the vesting was unauthorized and illegal. Our question then is whether, when the purported vesting occurred in 1942, the plaintiffs had an interest which was subject to lawful vesting.

■ By Executive Order 9193 issued July 6, 1942, 7 F.R. No. 134, the President created the Office of Alien Property Custodian, and gave that official the power, among others, to vest "any other property within the United States owned * * * by a designated enemy country or national thereof * * *." The order excluded, however, among other things, cash and securities, from the things which the Alien Property Custodian had the power to vest. A similar power as to those kinds of property was delegated to the Secretary of the Treasury. Then, to avoid the possibility that action might be invalid because it was taken by the wrong official, the Executive Order, in section 12 provided:

" * * * No person affected by any order, regulation, ruling, instruction, license or other action issued or taken by either the Secretary of the Treasury or the Alien Property Custodian shall be entitled to challenge the validity thereof or otherwise excuse his actions, or failures to act, on the ground that pursuant to the provisions of this Executive Order, such order, regulation, ruling, instruction, license or other action was within the jurisdiction of the Alien Property Custodian rather than the Secretary of the Treasury or vice versa. 50 U.S. C.A.Appendix following section 6."

The fact that the purported vesting was done by the Alien Property Custodian rather than by the Secretary of the Treasury was, then, made irrelevant by section 12 of the Executive Order.

■ We consider now the plaintiffs' contention that the interests which they had in the trust fund in 1942 were not subject to vesting. The Trading With the Enemy Act, as amended, 50 U.S.C. A.Appendix, § 1 et seq. in section 7 subjected to seizure "any money or other property including (but not thereby limiting the generality of the above) * * *, choses in action, and rights and claims of every character and description." This language is broad and comprehensive, and the courts have consistently held that the statutory provisions for seizure of enemy property are to be liberally construed. The authorities are cited in the opinion of the Court of Appeals for the Ninth Circuit in the case of Herrmann v. Rogers, 256 F.2d 871.

The plaintiffs say that their interests were "contingent" in 1942 when the purported vesting occurred. In the language of property law they were not contingent. The trust instrument gave them the income of the property until they reached 25, and then the principal. It then said, in language regarded by property lawyers as appropriate for the creation of a condition subsequent,

> "In the event of the death of any child * * * before receiving its share of the principal * * * leaving child or children surviving, the share of such parent shall * * * be paid over to the descendants of such deceased child."

The shares of the plaintiffs were, in the language of property lawyers, vested, subject to possible divestment, on the occurrence of conditions subsequent. Whether contingent in the property sense or not, their uncertain nature might, according to the philosophy of the plaintiffs' argument, render them immune from seizure by the Alien Property Custodian. But uncertainty as to the ultimate enjoyment of the property does not render it immune from seizure. On this point also the authorities are collected and discussed in the opinion in Herrmann v. Rogers, supra.

The recent case of Security-First National Bank of Los Angeles v. Rogers, Cal., 330 P.2d 811, is of interest in that it holds that a foreseeing creator of a trust may validly provide that if a situation arises in which a future interest would be subject to vesting by the Alien Property Custodian that situation may be made a condition subsequent or an alternative contingency upon which the property is given to American takers.

The defendant's motion for a summary judgment is granted. The plaintiffs' petition is dismissed.

It is so ordered.

BASTIAN, Circuit Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.