Bernice Elisabeth Bettenhausen SCHIEB
v.
**UNITED STATES.**
No. 22–58.

United States Court of Claims.
June 3, 1959.

---

Eldon S. Olson, Washington, D. C., for plaintiff, Burton K. Wheeler and Richard H. Strodel, Washington, D. C., on the brief.

M. Morton Weinstein, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant, Dallas S. Townsend and George B. Searls, Washington, D. C., on the briefs.

MADDEN, Judge.

The plaintiff, a German citizen, sues to recover the value of certain cash and securities of which she claims to be the owner, but which are in the possession of the United States. The Government got possession of them by means of a "vesting" order issued by its Alien Property Custodian. The plaintiff claims that, at the time the purported vesting order was issued, she had no interest in the property in question, and that, by the time that she acquired an interest in the property, the Government's power to vest property had expired.

The property in question was devised by William A. Aldrich, a citizen of the United States and a resident of California, who died in or before 1892, to his son, William Holt Aldrich, and the son's wife Minnie, for their lives, and upon the death of the survivor of them the corpus of the property was to be distributed to their children, the descendants of a deceased child to take their parent's share. The son, William Holt, died in 1897, but his wife Minnie lived until May 25, 1946. The corpus of the property thus did not become available for distribution until that date in 1946. In the meantime the plaintiff's mother, a child of the life tenants, had died in 1939, and the plaintiff's brother had died in 1940, so that she was, by that time, the sole surviving descendant of a deceased child of the life tenants. From 1940, all that stood between her and possession and ownership of the property, so far as the title was determined by the will of her great grandfather under which her title must be derived, was the life estate of her grandmother, Minnie, who had already outlived her husband by forty-three years.

By his vesting order dated January 18, 1943, the Alien Property Custodian vested "all right, title, interest and claim of any kind or character whatsoever" of the plaintiff in and to the trust estate established under the will of her great grandfather. In 1943 the Alien Property Custodian had, unquestionably, the power to vest the property of German citizens. In Gmo. Niehaus & Co. v. United States, 153 F.Supp. 428, 139 Ct. Cl. 605, Id. Ct.Cl., 170 F.Supp. 419, this court considered the question of whether the vesting power expired on December 31, 1946, or at any time before the enactment of Public Law 181, approved

October 19, 1951, 65 Stat. 451, 50 U.S. C.A. Appendix, preceding section 1. But, as we have said, the power to vest clearly existed in 1943. The plaintiff's attack is, then, not upon the power to vest, but upon the existence, in her, in 1943, of a "vestible" subject matter.

In the case of Von Bredow v. United States, Ct.Cl., 169 F.Supp. 256, this court considered the question of the nature of an interest in property sufficient to make it vestible, under the Trading With the Enemy Act, 50 U.S.C.A. Appendix, §§ 1–40. We found that the language of the statute itself is broad and comprehensive, and that it has been liberally interpreted by the courts in favor of the vesting power. Herrmann v. Rogers, 9 Cir., 256 F.2d 871, collates the precedents.

At the time of the vesting in 1943, the plaintiff, as we have seen, was the one who, under the terms of the will, would get the property upon the death of her grandmother, the life tenant. Whether her remainder was absolutely vested, so that the property would have gone to the plaintiff's estate if she had not survived her grandmother, or would have gone by the terms of the will or by intestacy to the heirs at law of the great grandfather, we need not determine. If so, her interest would perhaps be properly designated as a vested remainder, subject to being divested upon the happening of a condition subsequent. If one prefers to call it a contingent remainder, the name does not affect the result. The important thing is that the plaintiff had, in 1943, a substantial and valuable interest in the property, which, in all probability, would shortly entitle her to possession and complete ownership of the property. Such an interest could not pass unscathed through its owner's bankruptcy, as the case of the plaintiff's uncle demonstrated. In re Aldrich's Estate, 35 Cal.2d 20, 215 P.2d 724, 19 A.L.R.2d 885. Neither could it escape the rigors of war, with its seizure of enemy property. Von Bredow, supra.

The plaintiff makes an interesting argument to the effect that, until the death of her grandmother, the life tenant, in 1946 and, indeed, until the termination in 1952 of certain California litigation with regard to the right of a German to take property under the will of a California citizen, she had the right to reject the devise, and therefore had only an "election" and not an interest in the property.

If the Alien Property Custodian purported to vest the "interest" of one who was the heir presumptive of a living person, even though that living person was in extremis or was hopelessly insane so that he could not possibly make a will, that would be carrying the idea of an "interest" too far. The same would be true of the prospects of a person named in the will of a person who was still alive. These are, in law, mere expectancies, and the Alien Property Custodian, like the sheriff acting for creditors, must await the event before he acts. Nor can the Alien Property Custodian don the weeds of an alien widow and elect to take against the will of her husband, in order to enrich the Alien Property fund. See Dalisa v. Dumoff, 286 App.Div. 856, 141 N.Y.S.2d 700.

This is not to say, however, that one to whom property, or a valuable interest in property, has actually passed by inheritance or devise can repudiate the inheritance or devise in order to prevent it from being used to satisfy his creditors, or from being vested by the Alien Property Custodian. In any event, the plaintiff did not at any time repudiate her great grandfather's bounty. On the contrary, she has, in this suit and elsewhere, sought to get possession of it.

The plaintiff has urged other points which have received consideration but which, we think, do not require discussion.

The defendant's motion for summary judgment is granted, and the plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, LITTLETON, Judge (Ret.) and LARAMORE and WHITAKER, Judges, concur.