Frieda HERMANN, as sole remaining trustee under Trust Agreement dated March 30, 1946, by and between Fred Nagel, donor, and Frieda Hermann and Hazel Ouse, Trustees, Appellant,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.

Herbert BROWNELL, Jr., Attorney General of the United States, Appellant,

v.

Frieda HERMANN, as sole remaining trustee under Trust Agreement dated March 30, 1946, by and between Fred Nagel, donor, and Frieda Hermann and Hazel Ouse, trustees, Appellee.

No. 15233.

United States Court of Appeals Ninth Circuit.

Jan. 25, 1960.

Rehearing Denied March 28, 1960.

Felton & Bielenberg, Moscow, Idaho, Gee & Hargraves, Pocatello, Idaho, Phillip E. Petersen, Moscow, Idaho, for appellant.

Dallas S. Townsend, Asst. Atty. Gen., David Moses, George B. Searls, Irwin A. Seibel, Marbeth A. Miller, Attys., Dept. of Justice, Washington, D. C., Ben Peterson, U. S. Atty., Boise, Idaho, for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

When a case is appealed from this Court to the Supreme Court, this Court completely loses jurisdiction of the cause. Thereafter, our jurisdiction can be revived only upon the mandate of the Supreme Court itself, and even upon such restoration, the jurisdiction of this Court is rigidly limited to those points, and those points only, specifically consigned to our consideration by the Supreme Court.

In the instant case, this Court is functioning under such a remand. Consequently, our jurisdiction is strictly limited by the Supreme Court's mandate. That mandate is our compass and our guide.

### 1. Statement of the Case.

A full and detailed statement of the case is to be found in our opinion in Herrmann v. Rogers, 9 Cir., 1958, 256 F.2d 871, 872–874, and need not be repeated here.

### 2. The Remand from the Supreme Court.

On January 26, 1959, in Herrmann v. Rogers, 358 U.S. 332, 79 S.Ct. 353, 3 L. Ed.2d 345, the Supreme Court handed down the following specific mandate to this Court:

"PER CURIAM.

"The petition for writ of certiorari is granted. The judgment of the Court of Appeals is vacated, and the cause is remanded to it, to consider whether, under the law of property of Idaho, it was possible, after the time of the making of the conveyance, for any person other than the named beneficiaries of the trust to acquire a property interest in it (other than through a named beneficiary), and, in the light of its determination as to this, to reconsider its holding that respondent was entitled to all the trust funds remaining in the hands of the trustee."

### 3. The Pertinent "Law of Property of Idaho."

The pertinent "law of property of Idaho" is found in the following sections of

the Idaho Code, 1957 edition, Volume 9A:

"55–105. Future interests—When vested.—A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the ceasing of the immediate or precedent interest."

"55–106. Contingent interests.—A future interest is contingent whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain."

"55–109. Transfer and devolution of future interests.—Future interests pass by succession, will and transfer in the same manner as present interests."

"55–110. Possibilities.—A mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind."

"55–501. Transfer of possibilities.—A mere possibility not coupled with an interest can not be transferred."

"55–507. Grant effective on death without heirs.—Where a future interest is limited by a grant to take effect on the death of any person without heirs, or heirs of his body, or without issue, or in equivalent words, such words must be taken to mean successors, or issue living at the death of the person named as ancestor."

4. Even If There Is a Possibility That the Trust Property May Revert to the Settlor, That Possibility Is "Inalienable and Unsalable," "Remote," and "Not Favored in Law."

 At this stage of our analysis of the "Trust Agreement," we will assume that there is a possibility that the trust property may revert to the settlor. But that possibility is so unlikely to crystallize into reality that it is negligible.

Let us trace the labyrinthine windings of that possibility. For it to materialize, not a single one of the fourteen named beneficiaries must come to the United States before the settlor's death. Payment to a named beneficiary must at all times be subject to confiscation or "create sinews of war" for a "government antagonistic to the United States." All the fourteen named beneficiaries must die without a single one leaving a lineal descendant.

Now, human life being an uncertain quantity, every one of the above contingencies is possible. But the possibility is so remote as to be tantamount to what the ancient jurists of the common law were wont to term "a shadow of a shade."

In Koehler v. Clark, 9 Cir., 1948, 170 F.2d 779, 782, this Court characterized "the dominant objective" of Trading with the Enemy Act of 1917, 50 U.S. C.A.Appendix, § 1 et seq., as amended, as being "to sequester under government control the property of alien enemies and their nationals, so that such property may not be employed in the interest of any enemy government and against the interests of our own Nation."

In a preceding paragraph, we have endeavored to outline the remoteness and tenuousness of the present settlor's reversionary interest in the trust property. In Koehler, such an interest was described as "an inalienable and unsalable possible expectancy"—or at best a "remote" "contingent remainder" "not favored in law." 170 F.2d at page 783.

In a word, the settlor's interest in the present case consists of "such stuff as dreams are made on."

5. The Beneficiaries' Interests in the Trust Are Final and Indestructible. Consequently, There Is No Possibility of a Reversion to the Settlor or Any One Else.

 In her Supplemental Brief, Frieda attempts to reach down into the mind of the settlor of the trust and tell

us what he was "worried" about. She says:

"He was worried not about confiscation by the German government and unsettled conditions abroad but rather about seizure of the property by the United States Government pursuant to the provisions of the 'Trading With the Enemy Act.'"

If we must be interested in the settlor's "worries," let us examine his "Trust Agreement." Paragraph 4 is fully quoted in our previous opinion in this case. Herrmann v. Rogers, 256 F.2d at page 873. We need here to quote only the proviso that is here pertinent:

"* * * providing that said payment to said beneficiaries shall not be subject to consfication by; or create sinews of war for any government antagonistic to the United States."

Thus we see that the settlor of this trust was "worried" about "confiscation" by "any government antagonistic to the United States", and was worried about creating "sinews of war for any government antagonistic to the United States." He plainly said so; and he made no mention whatever in the entire Paragraph Four of what Freida terms "seizure of the property by the United States Government pursuant to the provisions of the 'Trading with the Enemy Act.'"

Furthermore, Paragraph 3 of the Trust Agreement demonstrates that the settlor neither expected nor desired that there should be any reversion to him; for the last sentence reads as follows:

"In the event any one of the named beneficiaries herein dies leaving no heirs of his or her body, then and in that event said sums shall be divided amongst the other named beneficiaries or the heirs of their bodies in proportion to their percentage herein set out *so that no property or money will remain in said trust upon its termination.*" (Emphasis supplied.)

Finally, Paragraph 4 clearly shows that the vesting of the remainders in the named beneficiaries was made contingent upon either of two events; namely, "In the event any of the named beneficiaries herein come to the United States"; or "in the event it is possible for the trustee to pay over to the named beneficiaries herein, at any time after the creation of this trust, the shares respectively going to each," etc.

Frieda's own affidavit shows that at least between March 30, 1946, and July 1949, all the named beneficiaries lived "in the Western Zone of Germany; such Western Zone being the Allied Zone, and not under the control of Russia."

Assuredly, it cannot be said that payment to the named beneficiaries in 1949, at a time when the Allied Forces still occupied Germany, was "subject to confiscation" by prostrate Germany, or would "create sinews of war" for that conquered nation. At that time, at least, the remainders vested finally and irrevocably in the named beneficiaries.

The settlor wanted to assure the beneficiaries of ultimate payment, but he empowered the trustee to defer such payment until conditions in Europe permitted it. Such deferment, however, did not militate against the beneficiaries' acquiring a vested interest in their respective shares in the corpus of the trust.

### 6. Conclusion.

Even if we assume that there is a possibility that the trust property may revert to the settlor, it is so remote as not to present an interest, under the de minimis rule, of sufficient substance to interfere with the appellee's right to the trust funds.

There is no ground, however, for the above assumption as to the reversion of the property to the settlor. The named beneficiaries have indefeasibly vested interests.

Accordingly, this Court holds that it was not possible, under the law of property of Idaho, after the time of the making of the conveyance, for any person other than the named beneficiaries of the

trust to acquire a property interest in it, other than through a named beneficiary.

In the light of our determination as to this, we have reconsidered our holding that the appellee United States was entitled to all the trust funds remaining in the hands of the trustee.

Upon such reconsideration, we adhere to our original holding that the appellee United States was so entitled.