## McGRATH, Atty. Gen., v. CITIES SERVICE CO. et al.

United States District Court
S. D. New York.

Oct. 24, 1950.

Irving H. Saypol, United States Attorney for Southern District of New York, New York City, James A. Devlin, Assistant United States Attorney, New York City, George B. Searls, Edward J. Friedlander, Attorneys, Office of Alien Property, Department of Justice, Washington, D. C., for plaintiff.

Milbank, Tweed, Hope & Hadley, New York City, Timothy N. Pfeiffer, New York City, for Chase Nat. Bank of City of New York.

Frueauff, Burns, Ruch & Farrell, New York City, for Cities Service Co.

McGOHEY, District Judge.

Each party moves either for judgment on the pleadings or for summary judgment. There appears to be no issue between the parties as to any material fact.

Vesting Order 12960, executed March 11, 1949, vested in the Attorney General as successor to the Alien Property Custodian as "property within the United States owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, Adline von Campenhausen" an enemy alien

"a. That certain debt or other obligation, matured or unmatured, evidenced by two (2) Cities Service Company 5% Gold Debentures Bearer Bonds, of $1,000 face value each, bearing the numbers M 23293 and M 23318, and any and all rights to demand, enforce and collect the aforesaid debt or other obligation, together with any and all rights of redemption, and,

"b. That certain debt or other obligation, matured or unmatured, evidenced by one (1) Cities Service Company 5% Gold Debenture Bearer Bond, of $1,000 face value, bearing the number M 7029, and all rights to demand, enforce and collect the aforesaid debt or other obligation, together with any and all rights in, to and under said bond."

On January 5, 1950, after some previous correspondence, the Office of Alien Property authorized and directed defendant Cities Service Company to cancel bonds M 23293 and M 23318 and to issue to the Attorney General in lieu thereof its check representing the proceeds of redemption with accrued interest. These two bonds had been called for redemption prior to the issuance of the Vesting Order. Cities Service Company was also authorized and directed to cancel bond M 7029 and to issue to the Attorney General a new bond of the same series for the same face value and having affixed thereto the number of coupons corresponding to the unredeemed coupons affixed to M 7029, or, alternatively, to issue a check for the redemption price and accrued interest. This bond matures in 1969.

This action was brought January 30, 1950, to enforce the above demands. De-

fendant Chase National Bank is the present trustee under the indentures under which the bonds were issued.

The parties have stipulated that no claim is to be made with regard to M 23293 because it was paid prior to the issuance of the Vesting Order. M 7029 was presented for redemption in New York by Fiduciary Trust Company of New York on behalf of Globe & Rutgers Fire Insurance Company on January 5, 1950. It was not redeemed. A notation of the issuance of the Vesting Order was made on the debenture and it was then returned to Fiduciary Trust Company. It is now apparently in the possession of a New York brokerage firm. The parties have stipulated that "The present whereabouts of Debenture No. M 23318, last reported in Berlin, are unknown. In response to an official inquiry from the Branch Office of the Office of Alien Property in Germany, the Deutsche Bank, located in the Soviet Sector of Berlin, by letter dated May 19, 1949, advised that * * * M 23293, M 23318 and M 7029 had been seized and transferred by the local occupying authorities and that, therefore, the debentures were not at present at their disposal. * * * Information in the possession of the Government indicates that the Debentures had been held in the Russian Sector of Berlin prior to the issuance of Vesting Order No. 12960 and that the seizure by the occupying authorities occurred prior to the issuance of the Vesting Order."

The Trading with the Enemy Act, § 5(b) (1), 50 U.S.C.A.Appendix, § 5(b) (1), authorizes the vesting of alien property "subject to the jurisdiction of the United States." Executive Order 9095, § 2(c), as amended, 50 U.S.C.A.Appendix, § 6 note, issued by authority of the Trading with the Enemy Act, authorizes the Alien Property Custodian to vest property "within the United States." The Government does not contend that the certificates were within or subject to the jurisdiction of the United States. Its position, as indicated by the Order's description of the property sought to be vested, is that the certificates are to be distinguished from the "debt or other obligation" and that, though the certificates were abroad, the "debt or other obligation" was within or subject to the jurisdiction of the United States and so could be vested.

The question whether in these circumstances there existed at the time of the issuance of the Vesting Order a "debt or other obligation" within or subject to the jurisdiction of the United States turns on the nature of these negotiable bearer bonds.[1]

"Bonds have never been considered only as evidences of obligation; from the earliest times they have been treated as the very obligations, and that notion persists."[2]

The Restatement of Conflict of Laws § 52, comment a declares: "A negotiable instrument is a document embodying a right; and the state which has jurisdiction of the document has jurisdiction of the right." The illustration thereunder seems precisely in point here: "A negotiable promissory note for the payment of $100 is made in state X by A, payable in the same state to B. B indorses the note to a bank, which holds it in its vaults in state Y. The obligation embodied in the note is subject to the jurisdiction of Y." Under this principle it would seem clear that the "debt or other obligation" sought to be reached by the Vesting Order was not within or subject to the jurisdiction of the United States.

---

1. The parties have stipulated that they are negotiable bearer bonds.

2. L. Hand, C.J., in Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; citing Bacon v. Hooker, 177 Mass. 335, 337, 58 N.E. 1078; Blackstone v. Miller, 188 U.S. 189, 206, 23 S.Ct. 277, 279, 47 L.Ed. 439 (Holmes, J.: "Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it * * *."); United States Fidelity & Guaranty Co. v. Riefler, 239 U.S. 17, 25, 36 S.Ct. 12, 60 L.Ed. 121. See 6 Williston, Contracts, 5311 (Rev.Ed.).

The United States Treasury Department takes the same view in the analogous problem of taxation of estates of nonresident aliens. Regulation 105, § 81.50 provides: "Real estate, tangible personal property, and the written evidence of intangible personal property which is treated as being the property itself are within the United States if physically situated therein. For example, a bond for the payment of money is not within the United States unless physically situated therein."

 The Trading with the Enemy Act and Executive Order 9095 purport to be concerned not with all property anywhere, but only with property "subject to the jurisdiction of the United States" or "within the United States." Vesting Order 12960 attempts to reach a "debt or other obligation" which is not within or subject to the jurisdiction of the United States. It is, therefore, without the authority of the Executive Order and the Act, and, consequently the defendants must have summary judgment.

Because of the view I have taken I do not come to a consideration of the other questions raised by the parties.

Settle order on notice.