**FIDELITY PARTNERS, INC., Petitioner**

v.

**FIRST TRUST COMPANY OF NEW YORK; Morgan Guaranty Trust Company of New York; Euroclear System; ING Bank of Manila; and Philippine Export and Foreign Loan Guarantee Corporation Respondents.**

No. 97 Civ. 5184(SHS).

United States District Court, S.D. New York.

June 15, 1999.

Robert L. Weigel, Gibson Dunn & Crutcher, New York City, for plaintiff.

David C. Singer, Dorsey & Whitney, New York City, for defendant First Trust Co. of New York.

James L. Kerr, Davis, Polk & Wardwell, New York City, for defendant Morgan Guaranty Trust Co. of New York.

## OPINION & ORDER

STEIN, District Judge.

Petitioner moves pursuant to Fed. R.Civ.P. 60(b) for relief from a judgment of this Court dated December 9, 1997, entered pursuant to an Opinion and Order dated December 1, 1997, denying its peti-tion for an order directing delivery of a definitive bearer bond to it, and pursuant to Fed.R.Civ.P. 15(a) to amend its petition. As set forth below, petitioner's motion is denied as moot. The following facts are set forth, in large part, in the Opinion and Order dated December 1, 1997, No. 97–5184, 1997 WL 752725 (S.D.N.Y. Dec.5, 1997)[1] and the opinion of the Second Circuit, 142 F.3d 560 (2d Cir.1998), and are summarized here for case of reference.

## BACKGROUND

I. *First New York Lawsuit: Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp., 96 Civ. 0407*

In January 1996, Fidelity filed an action against Philippine Export and Foreign Loan Guarantee Corporation ("Philguarantee") in New York State Supreme Court for New York County seeking to enforce a California judgment against Philguarantee that it had received by assignment. That action was removed to the United States District Court for the Southern District of New York and is entitled *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 96 Civ. 0407. On May 27, 1997, Judge Charles Brieant signed a restraining order barring Philguarantee from disposing of its $1.75 million participation interest in Series B Philippine Reduction Interest Bonds ("FLIRBs").

II. *This Action*

In July 1997, Fidelity brought this turnover petition pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610, as well as Fed.R.Civ.P. 69—which utilizes New York Civil Practice Law and Rules 5225(b) and 5227—to compel respondent First Trust Company of New York to deliver to Fidelity a definitive bond, in Fidelity's name, representing the $1.75 million interest held by respondent Phil-

---

**1.** Although the Opinion and Order dated December 1, 1997, was filed on December 5, 1997, it will be referred to as the December 1 Opinion and Order.

guarantee in the FLIRBs.[2] Philguarantee held its participation interest in the FLIRBs through ING Bank of Manila. The only entity on whose books the interest of Philguarantee was reflected was ING Bank. ING Bank, in turn, held its interest in the FLIRBs through Euroclear, where its interest was reflected in a book-entry credit to a securities account maintained by Morgan Guaranty's Brussels branch office. *See Fidelity Partners, Inc. v. First Trust Co. of New York,* 58 F.Supp.2d 52, 53 (S.D.N.Y.1997). In turn, Morgan London, as sub-custodian for Morgan Brussels, is the holder of the Global Bearer Certificates representing the FLIRBs, and is the only recorded owner of the FLIRBs reflected on the books of First Trust, the New York based fiscal and paying agent, registrar, transfer agent, and authenticating agent pursuant to the terms of three fiscal agency agreements entered into by the issuer. *Id.*

In its determination of December 1, 1997, this Court denied Fidelity's petition on two grounds. First, Philguarantee's interest in the FLIRBs was located in the Republic of the Philippines, where Philguarantee resides and where ING Bank of Manila, upon whose books Philguarantee's interest was represented, is located. *Id.* Because neither the FLIRBs, nor Philguarantee's participation interest in the FLIRBs, was located in the United States, Fidelity could not execute on those assets because the underlying judgment that Fidelity was seeking to enforce permitted execution only upon Philguarantee's assets located within the United States. *Id.*

Second, this Court held that respondent First Trust was an improper garnishee pursuant to section 5201(c)(4) of the CPLR because it was not a "firm or corporation which carries on its books an account in the name of the judgment debtor." *Id.* Therefore, First Trust could not be ordered to deliver a definitive bearer bond in the amount of Philguarantee's participation interest in the FLIRBs to Fidelity and, in turn, have Morgan Guaranty, Euroclear, and ING Bank of Manila make entries in their respective books representing this transfer by First Trust. *Id.* In addition, pursuant to the N.Y.U.C.C.— which governs the rights of a creditor to reach a judgment debtor's interest in a security—the judgment debtor's account can be reached only by process upon the financial intermediary upon whose books the interest of the debtor appears. *Id.* (citing N.Y.U.C.C. § 8–317(4)). Accordingly, Fidelity's efforts to execute on its judgment with respect to the FLIRBs were more properly directed at ING Bank of Manila, upon whose books Philguarantee's interest was reflected. *Id.* Moreover, CPLR §§ 5225 and 5227 and N.Y.U.C.C. § 8–317(6)[3] did not provide a basis for directing First Trust to deliver a definitive bearer bond to Fidelity where First Trust was a financial intermediary, and not a judgment debtor. *Id.* at 54.

III. *Restraining Order in Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp., 96 Civ. 0407*

Prior to this Court's December 1 Opinion and Order in this turnover action, the May 27, 1997 restraining order issued by Judge Brieant in *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.,* 96 Civ. 0407, prohibiting Phil-

---

**2.** The petition also named as respondents Morgan Guaranty, Euroclear, ING Bank of Manila, and Philguarantee, but sought no specific relief against those parties. Philguarantee and ING Bank have not appeared in these proceedings.

**3.** Section 8–317 has been repealed and replaced with § 8–112. Section 8–112 is not given retroactive effect for actions commenced prior to its effective date of October 10, 1997, and, therefore, § 8–317 continues to apply in this case. The result would be the same even if this Court were to apply § 8–112.

guarantee from disposing of its interest in the FLIRBs, was extended pending a decision on Fidelity's turnover petition. *See* Endorsement dated August 15, 1997 and filed on August 18, 1997 ("August 18 order"). In an endorsement filed in *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 96 Civ. 0407 on December 5, 1997—the same day the December 1 Opinion and Order in the turnover action was filed—this Court denied First Trust's and Morgan's motion for reconsideration of the August 18 order as "moot in light of the Opinion & Order dated 12/1/97."

On December 12, First Trust—apparently uncertain that this Court's endorsement of December 5 denying its motion on grounds of mootness reflected a view that Judge Brieant's restraining order in the first New York action had been effectively terminated by the December 1 Opinion and Order dismissing Fidelity's turnover petition—moved for an order formally vacating the restraining order in *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 96 Civ. 0407. On that same day, Fidelity wrote a letter expressing its view that the restraining order had not been vacated by virtue of either the December 1 Opinion and Order or the December 5 endorsement. On December 15, Fidelity filed a notice of appeal from the December 1 Opinion and Order. On December 18, Fidelity moved for a stay of any dissolution of the restraining order and opposed First Trust's request to vacate the restraining order. By order dated December 24, First Trust's motion to vacate the restraining order in *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 96 Civ. 0407, was granted "for the reasons set forth in this Court's Opinion and Order dated December 1, 1997," but the vacatur of the restraining order was stayed pending appeal. On December 31, Fidelity filed a notice of appeal from the December 24 order which was then consolidated with Fidelity's appeal from the December 10 judgment entered on the December 1 Opinion and Order in this action.

## IV. *Appeal*

On January 13, 1998, Morgan received a letter from ING Bank indicating that ING had sold Philguarantee's participation interest in the FLIRBs on December 6, 1997. On appeal, the Second Circuit wrote that Philguarantee was "entitled to consider itself freed of any restraint concerning sale of its interest in the FLIRBs after December 1, and was surely entitled to do so after December 5, when Judge Stein indicated that he regarded further consideration of the restraining order as moot." *See Fidelity Partners, Inc. v. First Trust Co. of New York*, 142 F.3d 560, 565–66 (2d Cir.1998). The Second Circuit remanded the appeal for this Court to decide whether Philguarantee had sold its participation interest in the FLIRBs on December 6, and wrote that if Philguarantee had sold its interest on December 6, "the entire controversy concerning Philguarantee's interest in the FLIRBs has become moot." *Id.* at 566.

On remand, it was determined that Philguarantee's participation interest in the FLIRBs had, in fact, been sold on December 12. *See* Findings of Fact and Conclusions of Law dated August 12, 1998, ¶ 6.

## V. *Contempt Sanctions*

Philguarantee was ordered in the course of *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 96 Civ. 0407, to produce the Participation Letter Agreement dated January 11, 1996, between it and ING pursuant to which Philguarantee acquired its participation interest in the FLIRBs. In response to Philguarantee's failure to comply with Magistrate Judge Pitman's order to produce the Participation Letter Agreement, this Court imposed sanctions on Philguarantee for contempt in the amount of $5,000 per day for each day of contempt after August 24, 1998. *See* Order dated August 11, 1998 in 96 Civ. 0407. To date, Phil-

guarantee has not produced the Participation Letter Agreement and has incurred fines of approximately $1.5 million for its failure to do so.

In order to show, during the proceedings upon remand, that Philguarantee had sold its participation interest in the FLIRBs, Philguarantee produced a Participation Repurchase Letter Agreement dated December 12, 1997 (the "December 12 Agreement"), entered into between Philguarantee and ING Bank. The December 12 Agreement is governed by New York law and contains a submission to the jurisdiction of this Court for any matter relating to that December 12 Agreement. In addition, the December 12 Agreement provides for service of process by mail.

## VI. *Motion Pursuant to Rule 60(b) and Rule 15(a)*

Fidelity has now moved pursuant to Fed.R.Civ.P. 60(b) for reconsideration of the December 1 Opinion and Order on the grounds of "newly discovered evidence" and Philguarantee's bad faith. Specifically, Fidelity contends that Philguarantee's continued failure to produce the Participation Letter Agreement along with the fact that the December 12 Agreement contains a New York choice of law clause, a consent to jurisdiction to the courts of New York, and a service by mail clause, provides a basis for this Court to infer that the Participation Letter Agreement contains similar submission to jurisdiction, choice of law, and service by mail provisions. Drawing this inference, Fidelity contends, would alter this Court's determination that Philguarantee's participation interest in the FLIRBs was not subject to attachment.

Fidelity also moves pursuant to Fed. R.Civ.P. 15(a) to amend its petition to delete Morgan Guaranty and First Trust as respondents and to add allegations that the Participation Letter Agreement contains New York choice of law, submission to jurisdiction of New York courts, and

service by mail provisions. For the reasons set forth below, the motion is denied.

## DISCUSSION

■ Rule 60(b) permits a court to relieve a party from a final judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." *See* Fed.R.Civ.P. 60(b)(2). A party seeking relief under Rule 60(b)(2) must demonstrate that "(1) newly discovered evidence is of facts existing at the time of [the prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative . . . of evidence already offered." *Tufts v. Corporation of Lloyd's,* 981 F.Supp. 808, 812 (S.D.N.Y. 1996) (citation omitted), *aff'd,* 128 F.3d 793 (2d Cir.1997) (per curiam).

■ A Rule 60(b)(3) motion will be granted where the moving party demonstrates that the non-movant engaged in misconduct that substantially interfered with the movant's ability to prepare its case. *SeeMonaghan v. SZS 33 Assocs. L.P.,* No. 89–4900, 1992 WL 135821, at *3 (S.D.N.Y. June 1, 1992). "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990) (citation omitted), *aff'd,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991).

## I. *Petitioner's Claim is Moot*

■ Fidelity's motion pursuant to Rule 60(b) has been rendered moot by Philguarantee's sale of its participation interest in the FLIRBs on December 12, 1997. On Fidelity's appeal of this Court's December 1 Opinion and Order denying its turnover petition, the Second Circuit wrote:

This action is essentially an attachment (garnishment) proceeding, and the January 13 letter [indicating that ING Bank had sold Philguarantee's participation interest in the FLIRBs on December 6, 1997] suggests that the thing Fidelity seeks to attach—Philguarantee's interest in the FLIRBs—no longer exists, at least not within the ownership of Philguarantee.... If the Court determines that [Philguarantee's] interest [in the FLIRBs] was sold on December 6, the entire controversy concerning Philguarantee's interest in the FLIRBs has become moot.

*Fidelity Partners,* 142 F.3d at 565–66. As noted above, this Court determined on remand that Philguarantee's interest in the FLIRBs had been sold on December 12, 1997. *See* Findings of Fact and Conclusions of Law dated August 12, 1998, ¶ 6.

On December 12, 1997, no restraining order was in effect because the restraining order had been effectively terminated as a result of the December 1 Opinion and Order. Fidelity is now seeking relief from an order denying it the ability to attach certain assets. The assets in question, however, have been sold and are no longer in the possession of Philguarantee. Consequently, Fidelity's Rule 60(b) motion has been rendered moot by the December 12 sale. *See, e.g., Bank of New York Co. v. Northeast Bancorp, Inc.,* 9 F.3d 1065, 1067 (2d Cir.1993) ("In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined"). Accordingly, Fidelity's motion pursuant to Fed.R.Civ.P. 60(b) to vacate this Court's December 10, 1997 judgment entered pursuant to the Opinion and Order dated December 1, 1997, is denied on the grounds of mootness.

## II. *The Sale Cannot Be Disregarded as a Fraudulent Conveyance*

■ Fidelity seeks to avoid dismissal on the grounds of mootness by claiming that this Court should undo the sale of Philguarantee's interest in the FLIRBs because the sale was a fraudulent conveyance pursuant to sections 273–a and 276 of the N.Y. Debtor & Creditor Law. That argument also fails. A sale may be disregarded as a fraudulent conveyance if the sale was not for fair consideration. *See Lending Textile, Inc. v. All Purpose Accessories Ltd.,* 174 Misc.2d 318, 320, 664 N.Y.S.2d 979, 981 (1st Dept.1997). "An indispensable component of fair consideration is good faith on the part of the judgment debtor ... who makes a conveyance." *Id.* (quoting *Superior Leather Co., Inc. v. Lipman Split Co., Inc.,* 116 A.D.2d 796, 797, 496 N.Y.S.2d 845, 845 (3d Dept. 1986)). Fidelity claims that Philguarantee's sale of its participation interest in the FLIRBs to ING was not for fair consideration because both parties knew that the sale was not made in good faith. Specifically, Fidelity claims that Philguarantee's sale of its interest to ING after Fidelity had filed its judgment, and the fact of its contemptuous conduct, constitutes bad faith.

■ The fact that Philguarantee sold its participation interest in the FLIRBs shortly after this Court issued its December 1 Opinion and Order does not demonstrate bad faith by Philguarantee. As of December 1, 1997—and certainly as of December 5—the restraining order in *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.,* 96 Civ. 0407, prohibiting Philguarantee from selling its participation interest in the FLIRBs was terminated. Consequently, Philguarantee was free to do as it wished with its participation interest in the FLIRBs, and the sale of the FLIRBs on December 12, 1997, does not establish bad faith. Moreover, the Court was aware of Philguarantee's contemptuous conduct at the time that it issued its December 1 Opinion and Order and, consequently, that conduct, in and of itself, does not warrant

voiding the sale.[4]

In addition, Fidelity claims that the sale was made in bad faith because Philguarantee knew that production of the December 12 Agreement to evidence the sale would constitute "newly discovered evidence" warranting this Court's granting Fidelity relief from the judgment entered pursuant to the December 1 Opinion and Order. Even if this Court were entitled to draw an inference that the Participation Letter Agreement dated January 11, 1996, contains the same provisions as those present in the December 12, 1997 Participation Repurchase Letter Agreement concerning submission to jurisdiction, choice of law, and service of process, however, the result of the December 1 Opinion and Order would not be different.

■ Fidelity contends that the December 12 Agreement indicates that the situs of Philguarantee's interest in the FLIRBs was located in New York and, thus, was subject to attachment. Although the existence of choice of law, submission to jurisdiction, and service of process provisions in the Participation Letter Agreement would subject ING and Philguarantee to the jurisdiction of this Court in connection with an action by either of them to enforce an obligation of the other party in relation to the FLIRBs, these provisions do not supply this Court with the power to attach assets of either party which are located outside of the United States. "[I]mmunity from suit and immunity from execution are distinct matters, and waiver of the former does not necessarily waive the latter." *Philippine Export and Foreign Loan*

*Guarantee Corp. v. Chuidian,* 218 Cal. App.3d 1058, 1094–95, 267 Cal.Rptr. 457 (1990). Thus, even where an agency of a foreign state has waived immunity from jurisdiction, only assets of that foreign agency which are located in the United States may be subject to post-judgment attachment. The facts that this Court relied on in determining that Philguarantee's interest in the FLIRBs was located in the Philippines—namely, that the Philippines was where Philguarantee resides and where ING Bank, the only entity on whose books Philguarantee's interest was reflected, is located—are not changed by the existence of any of the aforementioned clauses in the Participation Letter Agreement.

■ Moreover, just as the purported existence of the submission to jurisdiction and choice of law provisions in the Participation Letter Agreement does not change the situs of Philguarantee's interest in the FLIRBs,[5] such provisions would also not alter this Court's determination that First Trust was an improper garnishee pursuant to New York law. Section § 5201(c)(4) of the CPLR provides that in a case where a security is transferable by book entry, the firm which carries on its books an account in the name of the judgment debtor in which is reflected such security shall be the garnishee. The Court's previous determination that First Trust was an improper garnishee because it did not carry on its books an account in the name of Philguarantee is not at all changed by the purported presence of a submission to jurisdiction and choice of law clause in an

---

**4.** In addition, vacating the judgment entered pursuant to the December 1 Opinion and Order on the basis of Philguarantee's misconduct is not warranted because vacating the judgment would have repercussions for, and affect the rights of, parties such as First Trust who did not engage in any misconduct.

**5.** The case law cited by Fidelity in support of its argument that the FLIRBs are located in New York—in particular, *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) and *Cities Serv. Co. v. McGrath,* 342 U.S. 330,

72 S.Ct. 334, 96 L.Ed. 359 (1952)—was relied upon by Fidelity in its turnover petition and was fully considered by this Court when it decided that motion. A Rule 60(b) motion should not be used to reargue points previously rejected by the court. *See University of California Press v. G.A. Ins. Co. of N.Y.,* No. 94-4950, 1996 WL 497143, at *2 (E.D.N.Y. Aug. 26, 1996) (citing *Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985)).

agreement between Philguarantee and ING.

Nor would the existence of these provisions have extended the statutory authority of the New York sheriff to act outside of New York, or given the sheriff the ability to enforce Fidelity's judgment by executing on assets located outside the United States. Section 8–317(4) of the N.Y. U.C.C. provides that the interest of a debtor in a certificated security may be reached by a creditor by legal process upon the financial intermediary upon whose books the interest of the debtor appears.[6] Regardless of whether service of the turnover petition on ING by courier and telecopy was proper pursuant to the purported service of process provision in the Participation Letter Agreement, the relief sought in the turnover petition against First Trust was improper: as noted above, First Trust is an improper garnishee because it is not a financial intermediary on whose books the interest of the debtor appears, and N.Y.U.C.C. § 8–317 provides for attachment by legal service only upon an intermediary on whose books the debtor's security account is maintained.

III. *Fidelity May Not Amend its Petition*

Fidelity also seeks to amend its petition pursuant to Fed.R.Civ.P. 15(a). "Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint." *National Petrochemical Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991). Because Fidelity's request for relief from the judgment pursuant to Fed.R.Civ.P. 60(b) motion has been denied, Fidelity's application to amend its petition pursuant to Fed. R.Civ.P. 15(a) is also denied.

**6.** The corresponding current provision, § 8–112(c), similarly provides that the interest of a debtor in a security entitlement may be

*CONCLUSION*

For the foregoing reasons, petitioner's motion for relief from the judgment pursuant to Fed.R.Civ.P. 60(b) and to amend its petition pursuant to Fed.R.Civ.P. 15(a) is hereby denied.

reached by a creditor by legal process upon the securities intermediary with whom the debtor's securities account is maintained.